IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHLEEN KOWATCH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14 C 2841 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | Magistrate Judge Susan E. Cox |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Kathleen Kowatch ("Plaintiff") appeals the Commissioner of Social Security's decision to deny her Social Security Disability benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. We hereby construe Plaintiff's memorandum in support of summary judgment [dkt. 17] as a motion. We grant Plaintiff's motion for summary judgment [dkt. 17] and deny the Commissioner's motion for summary judgment [dkt. 26]. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

## STATEMENT

Plaintiff appeals the Commissioner of Social Security's decision to deny her Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1] We will construe Plaintiff's memorandum in support of summary judgment as a motion. A motion for summary judgment has been filed on behalf of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"). For reasons outlined below, we grant Plaintiff's motion [dkt. 17] and deny the Commissioner's motion [dkt. 27]. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

---

[1] *See* 42 U.S.C. §§ 405(g), 1383(c).

Plaintiff claims she has been disabled since February 28, 2006, due to chronic obstructive pulmonary disease, grade four spondylolisthesis, and lumbar stenosis.[2] Plaintiff applied for Supplemental Security Income on January 18, 2011.[3] The Social Security Administration denied her application.[4] Plaintiff filed a request for a hearing before an ALJ.[5] A hearing was held on July 24, 2012, in front of ALJ Roxanne J. Kelsey.[6]

Plaintiff asserted her back injury first happened over 20 years ago while lifting heavy bags of merchandise while she worked at Time Life Magazine.[7] Although she went to Palos Community Hospital emergency room after the incident, Plaintiff did not have any x-rays of her back taken at that time.[8] Since her injury, Plaintiff held a variety of jobs including multiple cashier positions and a server position.[9] From approximately January 2003 through December 2005, Plaintiff worked as an in-home caretaker, also referred to as a companion, five days a week.[10] Plaintiff has not held a job since her position as a companion in 2005.[11] Additionally, Plaintiff developed emphysema and claims she cannot do any exertional activities as a result.[12] Plaintiff went to Provident Hospital Emergency Room on October 7, 2009, due to exacerbation of chronic low back pain.[13] Plaintiff did not have an x-ray taken during this visit.[14] There is no evidence in the record that Plaintiff had a treating physician.[15]

---

[2] R. at 15, 227.
[3] R. at 54.
[4] R. at 69.
[5] R. at 80.
[6] R. at 27, 87, 93.
[7] R. at 37, 118, 222.
[8] R. at 37, 222.
[9] R. at 168.
[10] R. at 149.
[11] R. at 15, 34–5, 128, 133.
[12] R. at 222.
[13] R. at 56.
[14] R. at 56.
[15] R. at 19.

On April 13, 2011, Dr. Mahesh Shah performed a consultative examination for the Bureau of Disability Determination Services.[16] Dr. Marion Panepinto, an Agency reviewing physician, found Plaintiff's condition to be non-severe on April 22, 2011.[17] Similarly, Dr. Victoria Dow, another Agency reviewing physician, found Plaintiff's condition to be non-severe with no determinable impairments on August 24, 2011.[18] On October 21, 2011, Dr. Faheeda Begum prescribed Plaintiff Naproxen, Pantoprazole, and ibuprofen for Plaintiff's back pain.[19] On January 23, 2012, x-rays ordered by Dr. Begum at Stroger Hospital identified significant deformity at L5-S1, which possibly represented fracture displacement and anterior spondylolisthesis.[20] Further, on May 14, 2012, an MRI ordered by Dr. Begum revealed a fracture dislocation of sacrum with minimal neuroforamina stenosis at L4-5 and L5-S1.[21] Finally, on May 25, 2012, a CT scan ordered by Dr. Begum of Plaintiff's lumbar spine showed grade 4 spondylolisthesis at L5-S1 only.[22]

At the hearing, Plaintiff testified she often has to sleep on the floor in a fetal position due to her pain.[23] Plaintiff stated that her medication does not help her pain and her father does most of her household chores.[24] Furthermore, Plaintiff testified that the heaviest weight she can lift and carry is ten pounds, she can sit anywhere from ten to thirty minutes, and she has a very hard time standing.[25]

---

[16] R. at 56, 222.
[17] R. at 56.
[18] R. at 65
[19] R. at 210.
[20] R. at 16, 227–28.
[21] R. at 16, 228.
[22] R. at 235.
[23] R. at 38.
[24] R. at 39.
[25] R. at 39.

Following the hearing, the ALJ determined, *inter alia*, that: 1) Plaintiff has not engaged in substantial gainful activity since January 18, 2011;[26] 2) the ALJ determined that Plaintiff's severe impairments include chronic obstructive pulmonary disease, grade 4 spondylolisthesis, and lumbar stenosis;[27] 3) Plaintiff's impairments do not meet, either individually or in combination, the severity requirements of the listing in 20 CFR Part 404, Subpart P, Appendix 1;[28] 4) Plaintiff has the Residual Functional Capacity ("RFC") necessary to perform light work as defined in 20 CFR § 419.967(b) with additional stipulations including that she is limited to no more than occasional exposure to concentrated levels of dust, fumes, and gases;[29] 5) given the Plaintiff's determined RFC, the ALJ believed Plaintiff was capable of performing her past relevant work as a companion and there are jobs that exist in significant numbers that the Plaintiff can perform including, hand packer, assembler, and sorter.[30]

Although the ALJ found Plaintiff's impairments could reasonably be expected to cause Plaintiff's symptoms, she found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[31] The ALJ compared Plaintiff's testimony that her father shops, cooks, and does the laundry with Plaintiff's previous report that she did housework, prepared food or meals, cleaned, did laundry for 1-4 hours, and shopped once a week for 1-2 hours.[32] Additionally, the ALJ found the Plaintiff's testimony was not credible because

---

[26] R. at 15. The ALJ cited to this date as Plaintiff's application date. However, Plaintiff has not held a job since 2005. R. at 35, 128.
[27] R. at 15.
[28] R. at 16.
[29] R. at 16.
[30] R. at 19–20.
[31] R. at 17
[32] R. at 17, 39, 153–65.

Plaintiff testified that she had no hobbies, but previously reported she made jewelry, read, and watched television.[33]

The ALJ also found the Plaintiff's testimony about her alleged limitations was not credible. The ALJ cited Plaintiff testimony at the hearing that she could sit for approximately 10-30 minutes or stand for only 5 minutes, whereas she previously reported she could sit for at least 2 hours and stand from 15 minutes to 1 hour.[34] Plaintiff testified that her back pain is a "9" on a 10-pain level scale, but the ALJ found that the "alleged frequency and intensity of her symptoms are not supported by the medical records."[35] The ALJ cited inconsistencies between Plaintiff's disability and function reports with her medical records and physical examination on April 13, 2011.[36] The ALJ ruled that "[t]he lack of invasive procedures suggests limited pain complaints."[37] The ALJ chose not to give much weight to the State agency doctors' opinion that the Plaintiff does not have severe impairment, but chose to give great weight to the consultative examination.[38]

## DISCUSSION

### I. STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act,[39] if it is supported by substantial evidence, and if it is free of legal error.[40] Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[41] Although we review

---

[33] R. at 18, 153–165.
[34] R. at 18, 41–42, 153–165
[35] R. at 18, 40
[36] R. at 18, 153-165, 176–182, 195–207, 222–26.
[37] R. at 18.
[38] R. at 19, 57, 222–25.
[39] 20 C.F.R. §§ 404.1520(a) and 416.920(a).
[40] 42 U.S.C. § 405(g).
[41] *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion.[42] A "minimal[] articulat[ion] of her justification" is enough.[43]

## II. THE ALJ FAILED TO BUILD A "LOGICAL BRIDGE" BETWEEN THE RECORD OF PULMONARY DISEASE AND THE LIMITATIONS SPECIFIED IN THE RFC DETERMINATION

In this case, the ALJ failed to build a "logical bridge" between the medical evidence on the record, and her RFC determination that Plaintiff is capable of performing light work with no more than occasional exposure to concentrated levels of dust, fumes and gases.[44] While the ALJ held the Plaintiff not to be credible as to her limitations due to her back, the ALJ failed to address Plaintiff's limitations due to her obstructive pulmonary disease.[45] Instead, the ALJ found the Plaintiff's RFC to include occasional exposure to concentrated levels of dust, fumes, and gases.[46] The ALJ was required to provide at least some evidence contradicting Plaintiff's claim, and supporting the ALJ's proposed limitations.[47] However, the ALJ provided no rationale as to how she came to the determination that Plaintiff could occasional be exposed to concentrated levels of dust, fumes, and gases, even though the ALJ held the Plaintiff had a severe impairment of obstructive pulmonary disease.[48] While the ALJ is not required to discuss every piece of evidence, she must still articulate her analysis of the evidence at some minimum level.[49] If the ALJ did not find Plaintiff's testimony credible as to Plaintiff's breathing limitations, the ALJ did not state so in her opinion. Therefore, there is a "logical bridge" missing from the RFC determination to the ALJ's conclusion.

---

[42] *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).
[43] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).
[44] R. at 16–18.
[45] R. at 15.
[46] R. at 16–18.
[47] *Godbey v. Apfel,* 238 F.3d 803, 808 (7th Cir. 2000).
[48] R. at 15.
[49] *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

6

Additionally, the ALJ found Plaintiff's "level or frequency of treatment is inconsistent with the level of complaints."[50] The ALJ said that "[t]he lack of invasive procedures suggests limited pain complaints."[51] However, the ALJ did not mention what treatment the Plaintiff should have undergone to solve her ailments.[52] There is no evidence in the record the Plaintiff rejected any treatments, nor did the ALJ ask Plaintiff why she had not sought treatment.

### III. THE ALJ FAILED TO BUILD A "LOGICAL BRIDGE" BETWEEN EVIDENCE OF PLAINTIFF'S ACTIVITIES AND THE ABILITY TO PERFORM LIGHT WORK

In this case, the ALJ failed to build a "logical bridge: between the medical evidence on the record, and her conclusion that Plaintiff is capable of performing "light work" with no more than occasional exposure to concentrated levels of dust, fumes and gases, despite Plaintiff's complaints of back pain and difficulty breathing. "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.* To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."[53] According a Social Security Administration Program Policy Statement, the full range of light work requires a claimant to walk or stand for up to six hours in an eight-hour workday.[54]

---

[50] R. at 18.
[51] R. at 18.
[52] *Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013).
[53] 20 CFR 404.1667 (emphasis added); *see also Hermann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014).
[54] SSR 83–10, 1983 WL 31251, at *5–6; *see also Thomas v. Colvin*, 534 Fed. Appx. 546, 549 n.1 (7th Cir. 2013).

Here, the ALJ found that the "the claimant's subjective complaints and alleged limitations" contained inconsistencies regarding her daily activities and hobbies.[55] The ALJ cited Plaintiff's previous reports that "she did housework, prepared food or meals for an hour or so, cleaned, did laundry for 1-4 hours, and shopped once a week for 1-2 hours," and "that she made jewelry, read, and watched television" as proof that the Plaintiff's limitations did not prevent her from performing light work.[56]

However, the ALJ failed to analyze the relationship between the activities that Plaintiff testified she could perform and their relationship to Plaintiff's ability to stand or walk for up to six hours per day. It is unclear from this record how performing occasional chores around the house is equivalent to, or indicative of, the ability to engage in light work, as defined by the Social Security Administration. The ALJ failed to consider that such activities can be done at the Plaintiff's own pace and schedule or with the assistance of others, and did not analyze the amount of continuous or prolonged standing or walking that would be required for the Plaintiff to engage in such activities. Without this analysis, the ALJ did not draw the "logical bridge" between the medical records and her ability to perform "light work" (*i.e.* Plaintiff's ability to stand or sit for up to six hours in an eight-hour workday). Failing to do so was legal error, and the ALJ's decision is reversed.

## **CONCLUSION**

For the foregoing reasons, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 17] and the Commissioner's motion for summary judgment is hereby denied [dkt. 26].

---

[55] R. at 17-18.
[56] *Id.*

**ENTER:**

**DATED:** November 12, 2015

_____
Susan E. Cox
United States Magistrate Judge